UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYLER MAUL,

      Plaintiff,

vs.

BEAUMONT HOSPITAL – DEARBORN,
a Michigan corporation, K-9 ACADEMY
TRAINING FACILITY, LLC,
a Michigan Limited Liability Company,
JOSEPH TUCKER, an individual,
WHITNEY GUERBER, an individual,
DANIEL MACK, an individual, and
MARK WILKES, an individual,

      Defendants.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiff, TYLER MAUL, by and through his attorneys, TERESA J. GORMAN, PLLC, for his Complaint, states:

### JURISDICTION AND PARTIES

      1.    This suit is brought pursuant to the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*., the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et*

*seq.*, the Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq., the Worker's Disability Compensation Act of 1969, MCL §418.101, et seq., and Michigan common law.

2.      This court has jurisdiction pursuant to 28 U.S.C. § 1331, and 28 U.S.C. §1367(a).

3.      Plaintiff is a citizen of the United States and resides in Flat Rock, Michigan.

4.      Defendant Beaumont Hospital – Dearborn ("Beaumont") is a Michigan corporation doing business in Dearborn, Michigan.

5.      Defendant K-9 Academy Training Facility, LLC ("K9ATF") is a Michigan limited liability company doing business in Taylor, Michigan.

6.      At all relevant times, Defendant Joseph Tucker ("Tucker") was the Security Director at Beaumont and Plaintiff's direct supervisor.

7.      At all relevant times, Defendant Whitney Guerber ("Guerber") was the K-9 Coordinator for the entire Beaumont Hospital system and was also one of Plaintiff's supervisors.

8.      At all relevant times, Defendant Daniel Mack ("Mack") was a trainer at K9ATF.

9.      At all relevant times, Defendant Mark Wilkes ("Wilkes) was a trainer at K9ATF.

10. Plaintiff was Beaumont's employee within the meaning of the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*, the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq.*, the Elliott-Larsen Civil Rights Act, MCL §37.2101 *et seq.*, and the Worker's Disability Compensation Act of 1969, MCL §418.101, *et seq.*

11. Beaumont meets all of the requirements for employer status under the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*, the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.,* the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq.*, the Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq., and the Worker's Disability Compensation Act of 1969, MCL §418.101, *et seq.*

12. K9ATF is a vendor and/or contractor of Beaumont providing canine handler security training to Beaumont's security staff.

13. K9ATF meets all of the requirements for a business that is open to the public or that provides goods or services to the public as that term is defined under Section III of the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*

14. The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney fees.

15.     The events giving rise to this cause of action occurred in the cities of Dearborn and Taylor, Michigan, in the Eastern District of Michigan.  Accordingly, venue lies in the United States District Court for the Eastern District of Michigan under 28 U.S.C. §1391(b).

## STATEMENT OF FACTS

16.     Plaintiff incorporates by reference herein the foregoing paragraphs  and allegations.

17.     Plaintiff is a Caucasian 30 year old man with legally recognized disabilities;  i.e., General Anxiety Disorder and Panic Disorder.

18.     Plaintiff informed Beaumont of his disabilities at the time of hire.

19.     In 2015, Plaintiff graduated from Ferris State University with a degree in criminal justice.

20.     In 2018, Plaintiff commenced employment as a security officer at Beaumont Hospital – Taylor.

21.     In July 2021, Plaintiff responded to a posted opening and was hired for a security position at Beaumont.

22.     In November 2021, Plaintiff responded to a posted opening and was transferred to a canine ("K-9") officer position at Beaumont.

23.     In late November or early December 2021, Plaintiff and Beaumont entered into a contract via a signed job description wherein the parties committed to a three (3) year term.

24.     In early December 2021, Plaintiff drove to Wapakoneta, Ohio to adopt Lincoln, a one year old German Shepherd, who had been born on November 13, 2020 in the Czech Republic and transported to the United States early in 2021.

25.     Lincoln's implanted identity chip and other documentation identifies Plaintiff as Lincoln's owner.

26.     Lincoln lived with and was cared for by Plaintiff from December 2021 to September 2022 when Beaumont unlawfully removed him from Plaintiff's custody.

27.     On December 13, 2021, Plaintiff and Lincoln began a three-month training at K9ATF's Taylor, Michigan facility.

28.     The first month of training was full time at K9ATF's Taylor, Michigan facility.

29.     The second and third month of training consisted of two days (Monday and Tuesday) training at K9ATF's Taylor, Michigan facility and three days (Wednesday, Thursday and Friday) working at Beaumont.

30.     K9ATF trainers with whom Plaintiff and Lincoln trained included, in particular, Defendants Mack and Wilkes.

31.     As a "K9 handler" at Beaumont, Plaintiff reported to Defendants Tucker, Guerber and Lt. DeShaun White ("Lt. White").

32.     Tucker, Lt. White, and their supervisor, Morris Cotton, are African American.

33.     Plaintiff had an unblemished record at both K9ATF and Beaumont as a K9 handler and obtained his certification in March 2022.

34.     In or around July 2022, K9ATF trainer Mack became increasingly cruel and abusive with Lincoln in the use of a shock collar.

35.     K9ATF's trainer Mack subjected Lincoln to unlawful continuous shocks as a form of punishment rather than training.

36.     Lincoln suffered injuries due to Mack's unlawful, cruel, and abusive treatment, including, but not limited to, experiencing breathing difficulties and becoming progressively afraid of people.

37.     Plaintiff adamantly insisted that Mack stop unlawfully abusing Lincoln but Mack refused to cease and desist.

38.     In July and August 2022, Plaintiff complained to Beaumont through Defendants Tucker and Guerber about the unlawful, cruel and abusive treatment to which Lincoln was being subjected by Mack.

39.     Tucker told Plaintiff that Beaumont would "handle it" but did not take any action.

40.     Mack's unlawful, cruel, and abusive treatment of Lincoln continued unabated.

41.     On August 16, 2022, Plaintiff was pulled into a meeting at the K9ATF training facility with Defendants Guerber, Mack, and Wilkes.

42.     At the August 16, 2022 meeting, Guerber, Mack, and Wilkes berated and harassed Plaintiff for over two (2) hours, telling him he was not a good K9 handler, and that he was being removed from the K9 program because, per Guerber, "we feel you cannot do the job because you have anxiety." Plaintiff and Lincoln left the training facility and went home.

43.     Plaintiff had never provided Defendants Mack or Wilkes or anyone else at K9ATF any information about his private health issues.

44.     The next day, on August 17, 2022, Plaintiff complained again to Tucker about the unlawful abuse to which Lincoln was being subjected and the treatment to which he had been subjected the day before at the meeting with Guerber, Mack, and Wilkes.

45.     On August 17, 2022, Tucker again told Plaintiff he would "handle it."

46.     Tucker then told Plaintiff that he did not want Lincoln in the hospital and to place Lincoln in Beaumont's K-9 car with the windows rolled down on this hot summer day. The car did not have the proper equipment for long-term confinement of Lincoln.

47.     Plaintiff pleaded with Tucker and provided various other ways to keep Lincoln safe and out of the hospital.

48.     Tucker denied Plaintiff's alternative options.

49.     Defendant then assigned Plaintiff to a post inside Beaumont and directed him to not to leave his post for any reason unless he was relieved.  Relief was unavailable for long periods of time as Lincoln was confined to the hot car.

50.     Tucker's treatment of Lincoln and Plaintiff caused Plaintiff to experience extreme illness due to his anxiety.

51.     Plaintiff called Beaumont's Lt. Deshaun White ("Lt. White") to request permission to go home due to his illness and anxiety, but Lt. White denied the request.

52.     That afternoon, August 17, 2022, Plaintiff filed a complaint on Beaumont's "Trust Line" complaint system.

53.     On August 19, 2022, Plaintiff spoke with family friend Patricia Odette who is the Mayor of the City of Woodhaven, Michigan, and explained that he had complained about the cruel and abusive treatment to which Lincoln had been treated both by K9ATF and Beaumont, the adverse health reaction Plaintiff had suffered, and the discriminatory and retaliatory treatment to which Plaintiff was now being subjected.

54.     Mayor Odette called both Beaumont and K9ATF on Plaintiff's behalf.

55.     On August 20, 2022, Plaintiff called in sick, suffering from chest pain, and went to urgent care at Beaumont – Woodhaven where he was diagnosed with Covid.

56.     Beaumont placed Plaintiff on a Covid leave of absence for 10 days.

57.     On August 22, 2022, while Plaintiff was on Covid leave of absence, Guerber called Plaintiff at home and verbally berated him again, stating "you don't call HR, mayors or the Trust Line without going through us first."  Guerber further informed Plaintiff that he was no longer allowed to go to the K9ATF training center because he had reported the cruel and abusive conduct of Mack and Wilkes to Beaumont Human Resources and to Security supervision.

58.     On August 30, 2022, Plaintiff returned to work at Beaumont where he was threatened by Tucker, in the presence of Lt. White, that if he spoke with or complained to anyone else about the recent events, he would lose Lincoln as well as his job.

59.     That same day, August 30, 2022, Tucker directed Plaintiff to take Lincoln to Cahill Veterinary Hospital for a two-week in hospital evaluation. Plaintiff complied.

60.    On September 2, 2022, Plaintiff suffered a massive anxiety attack at work due to the continuing harassment, discrimination, and retaliation to which he was being subjected.

61.    On or around September 2, 2022, Plaintiff's personal care physician completed FMLA documentation to place Plaintiff on intermittent FMLA due to the at-work anxiety and panic attacks of August 17, 2022 and September 2, 2022.

62.    Plaintiff submitted the FMLA documents to Beaumont's Human Resources department.

63.    From August 30, 2022 to September 7, 2022, Tucker and Lt. White continuously assured Plaintiff that Lincoln would return to him.

64.    On September 6, 2022, Tucker told Plaintiff to pick up Lincoln from the veterinary hospital the next day. Tucker opined that Lincoln was not doing well without Plaintiff and that Plaintiff was not doing well without Lincoln.

65.    The next day, September 7, 2022, before Plaintiff could pick up Lincoln, Tucker informed Plaintiff that he could no longer keep Lincoln because he had applied for FMLA intermittent leave.

66.    From September 7, 2022 through September 13, 2022, Plaintiff's requests for information about Lincoln's whereabouts and well-being were ignored and/or dismissed.  Plaintiff and his mother both left messages for Human Resources but did not receive return calls.  Plaintiff's anxiety and panic increased.

67.   On September 13, 2022, Plaintiff was pulled into a meeting in Beaumont's Human Resources office with HR Representative Kelly Wormer, Tucker, Lt. White, and another security department supervisor, Keith McLean.  At this meeting, Tucker and the others accused Plaintiff of "bizarre behavior", ordered Plaintiff to undergo a "fit for duty" examination or lose his job, and disarmed Plaintiff of his taser pending the "fit for duty" test.  Multiple false accusations were made against Plaintiff by the Beaumont employees at this meeting.

68.   On September 14, 2022, with his anxiety and panic disabilities exacerbated, Plaintiff sought treatment from his primary care physician.

69.   Plaintiff's primary care physician placed Plaintiff on a four (4) week medical leave.

70.   At the same time, Plaintiff's psychiatrist diagnosed Plaintiff with PTSD due to the treatment to which he had been subjected by Defendants.

71.   Plaintiff attempted to file a claim for worker's compensation benefits with Beaumont but Beaumont representatives refused to complete the requisite paperwork.

72.   Subsequently, Defendants revoked Plaintiff's certification as a K-9 handler.  The revocation resulted in an immediate pay cut and effectively extinguished Plaintiff's prospects of employment as a K-9 handler.

73.    African American K-9 handlers have violated the rules and regulations governing K-9 handlers and have not received discipline nor had their certifications revoked or their contracts terminated.

74.    Beaumont, by and through its agents, representatives, and employees, treated Plaintiff differently from similarly situated African American employees in the terms and conditions of employment, based on unlawful consideration of race.

75.    In early October 2022, Plaintiff's primary care physician extended Plaintiff's medical leave by an additional two (2) weeks.

76.    Plaintiff's requests for the return of Lincoln to his care were denied.

77.    On October 24, 2022, Plaintiff was constructively discharged.

78.    On April 17, 2023, the Equal Employment Opportunity Commission issued a right-to-sue letter to Plaintiff.

79.    This litigation is filed within ninety (90) days of Plaintiff's receipt of his right-to-sue letter.

**COUNT I**
**DISABILITY DISCRIMINATION**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,**
**AS AMENDED**
**(AS TO ALL DEFENDANTS)**

80.    Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

81.     At all relevant times, Plaintiff was an individual with a disability within the meaning of the Americans With Disabilities Act. Specifically, Plaintiff has a physical or mental impairment that substantially limits one or more of his major life activities, has a record of the impairment, and/or is regarded by Defendants as having the impairment.

82.     Defendants, through their employees, agents, and representatives, denied Plaintiff's request for reasonable accommodation.

83.     Defendants, through their employees, agents, and representatives, failed to engage in the interactive process in good faith.

84.     Defendants, through their employees, agents, representatives, treated Plaintiff differently from similarly situated disabled and non-disabled employees in the terms and conditions of employment.

85.     Defendants revealed Plaintiff's private medical and/or disability information without authorization in violation of the ADA.

86.     Defendants' decision to deny Plaintiff's physician's written requests for a reasonable accommodation for Plaintiff due to his disability, constitutes discrimination against Plaintiff with respect to the terms, conditions, and/or privileges of employment in violation of the Americans With Disabilities Act.

87.     Defendants' decision to revoke Plaintiff's K9 handler certification and terminate Plaintiff's employment as a K-9 handler, in part because of his disability,

constitutes discrimination against Plaintiff with respect to the terms, conditions, and/or privileges of employment in violation of the Americans With Disabilities Act.

88.     Defendants' decision to revoke Plaintiff's K9 handler certification and terminate Plaintiff's employment as a K-9 handler because of his disability and because he has a record of an impairment, constitutes discrimination against Plaintiff in respect to the terms, conditions, and/or privileges of employment in violation of the Americans With Disabilities Act.

89.     Defendants' decision to revoke Plaintiff's K9 handler certification and terminate Plaintiff's employment as a K-9 handler because they regarded Plaintiff as disabled constitutes discrimination against Plaintiff in respect to the terms, conditions, and/or privileges of employment in violation of the Americans With Disabilities Act.

90.     Defendants' acts and/or omissions and those of their agents, representatives, and employees were intentional and constituted willful disregard for Plaintiff's rights and sensibilities.

91.     As a direct and proximate result of Defendants' wrongful acts and/or omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, and humiliation and embarrassment.

**COUNT II**
**RETALIATION / RETALIATORY HARASSMENT**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,**
**AS AMENDED**
**(AS TO ALL DEFENDANTS)**

92.    Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

93.    Plaintiff complained to Defendants about the disability discrimination to which he was subjected.

94.    Third parties complained to Defendants about the disability discrimination to which Plaintiff was subjected.

95.    Plaintiff was subjected to retaliation by Defendants in whole or in part because he complained of unlawful acts of discrimination and harassment in violation of the Americans With Disabilities Act, as amended.

96.    This retaliation occurred, in part, because Plaintiff engaged in protected activity pursuant to the Americans With Disabilities Act, as amended.

97.    Defendants' acts violated the Americans With Disabilities Act, as amended.

98.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, and humiliation and embarrassment.

## COUNT III
## DISABILITY DISCRIMINATION
## IN VIOLATION OF THE PERSONS WITH DISABILITIES
## CIVIL RIGHTS ACT
## <u>(AS TO ALL DEFENDANTS)</u>

99.   Plaintiff incorporates by reference herein the foregoing paragraphs  and allegations.

100.   At all relevant times, Plaintiff was an individual with a disability within the meaning of the Persons With Disabilities Civil Rights Act.  Specifically, Plaintiff has a physical or mental impairment that substantially limits one or more of his major life activities, has a record of the impairment, and/or is regarded by Defendants as having the impairment.

101.   Defendants, through their employees, agents, and representatives, denied Plaintiff's request for reasonable accommodations.

102.   Defendants, through their employees, agents, and representatives, failed to engage in the interactive process in good faith.

103.   Defendants, through their employees, agents, representatives, treated Plaintiff differently from similarly situated disabled and non-disabled employees in the terms and conditions of employment.

104.   Defendants revealed Plaintiff's private medical and/or disability information without authorization in violation of the PWDCRA.

105.  Defendants' decision to deny Plaintiff's physician's written requests for a reasonable accommodation for Plaintiff due to his disability, constitutes discrimination against Plaintiff with respect to the terms, conditions, and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

106.  Defendants' decision to revoke Plaintiff's K9 handler certification and terminate Plaintiff's employment as a K-9 handler because of his disability, constitutes discrimination against Plaintiff with respect to the terms, conditions, and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

107.  Defendants' decision to revoke Plaintiff's K9 handler certification and terminate Plaintiff's employment as a K-9 handler because of his disability and because he has a record of an impairment, constitutes discrimination against Plaintiff in respect to the terms, conditions, and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

108.  Defendants' decision to revoke Plaintiff's K9 handler certification and terminate Plaintiff's employment as a K-9 handler because they regarded Plaintiff as disabled constitutes discrimination against Plaintiff in respect to the terms, conditions, and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

109.    Defendants' acts and/or omissions and those of their agents, representatives, and employees were intentional and constituted willful disregard for Plaintiff's rights and sensibilities.

110.    As a direct and proximate result of Defendants' wrongful acts and/or omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, and humiliation and embarrassment.

**COUNT IV**
**RETALIATION / RETALIATORY HARASSMENT**
**IN VIOLATION OF THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**
**(AS TO ALL DEFENDANTS)**

111.    Plaintiff incorporates by reference herein the foregoing paragraphs  and allegations.

112.    Plaintiff complained to Defendants about the disability discrimination to which he was subjected.

113.    Third parties complained to Defendants about the disability discrimination to which Plaintiff was subjected.

114.    Plaintiff was subjected to retaliation by Defendants in whole or in part because he complained of unlawful acts of discrimination and harassment in violation of the Persons With Disabilities Civil Rights Act.

115.   This retaliation occurred, in part, because Plaintiff engaged in protected activity pursuant to the Persons With Disabilities Civil Rights Act.

116.   Defendants' acts violated the Persons With Disabilities Civil Rights Act.

117.   As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, and humiliation and embarrassment.

**COUNT V**
**INTERFERENCE AND RETALIATION**
**IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT**
**(AS TO DEFENDANTS BEAUMONT, TUCKER AND GUERBER**

118.   Plaintiff incorporates by reference herein the foregoing paragraphs  and allegations.

119.   Defendants violated The Family Medical Leave Act when it discriminated against Plaintiff as described regarding the terms, benefits, conditions, and privileges of his employment by interfering with Plaintiff's right to leave and/or intermittent leave under the Family Medical Leave Act.

120.   Defendants violated The Family Medical Leave Act when it discriminated against Plaintiff as described regarding the terms, benefits, conditions, and privileges of his employment by retaliating against Plaintiff for

exercising his right to leave and/or intermittent leave under the Family Medical Leave Act.

121.   Such interference and retaliation includes, but is not limited to, revoking Plaintiff's K9 handler certification and terminating Plaintiff's employment.

122.   As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT VI**
**RACE DISCRIMINATION**
**IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**<u>(AS TO DEFENDANTS BEAUMONT, TUCKER AND GUERBER)</u>**

123.   Plaintiff incorporates by reference herein the foregoing paragraphs  and allegations.

124.   During Plaintiff's employment with Defendants, Defendants, through their employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on unlawful consideration of race.

125.   During Plaintiff's employment with Defendants, Defendants, through their employees, agents, and representatives, treated Plaintiff differently from

similarly situated African American employees in the terms and conditions of employment

126.   Plaintiff was subjected to race discrimination by Defendants, by and through their employees, agents, and representatives, said acts being made unlawful by the Elliott-Larsen Civil Rights Act.

127.   Defendant, by and through its employees, agents, and representatives, violated the Elliott-Larsen Civil Rights Act by the following acts:

a.   subjecting Plaintiff to racially derogatory and discriminatory conduct;

b.   denying Plaintiff job opportunities that were provided to his African American peers;

c.   denying Plaintiff disability accommodations that were provided to his African American peers;

d.   discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition or privilege of employment,

e.   limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of his race;

f.       discharging or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition or privilege of employment, because of his race.

128.   Defendants, by and through their employees, agents, and representatives, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

129.   Defendants, by and through their employees, agents, and representatives, treated Plaintiff differently from similarly situated African American employees in the terms and conditions of employment, based on unlawful consideration of race.

130.   Defendants' actions were intentional and with reckless indifference to Plaintiff's rights and sensibilities.

131.   If Plaintiff had been African American, he would not have been treated in the manner recounted above.

132.   As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, and humiliation and embarrassment.

## COUNT VII
## RETALIATION AND
## RETALIATORY DISCHARGE IN VIOLATION OF
## THE WORKER'S DISABILITY COMPENSATION ACT
## (AS TO BEAUMONT)

133. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

134. In or around September 2022, Plaintiff attempted to file a claim for worker's compensation benefits with Beaumont but Beaumont representatives refused to complete the requisite paperwork.

135. Beaumont, through its employees and agents, was aware of Plaintiff's claims for benefits under the Act.

136. Beaumont revoked Plaintiff's K9 handler certification and discharged Plaintiff from his position as a K-9 handler as retaliation, in whole or in part, for exercising his rights under the Workers' Disability Compensation Act, in specific violation of MCL §418.301 (11).

137. As a direct and proximate result of Beaumont's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT VIII
## TERMINATION IN VIOLATION OF PUBLIC POLICY
## (AS TO DEFENDANTS BEAUMONT, TUCKER AND GUERBER)

138.   Plaintiff   incorporates   by   reference   herein   the   foregoing

paragraphs   and allegations.

139.   The Michigan Legislature has designed three (3) primary provisions

related to cruelty to animals, including, but not limited to, intentional infliction of

pain and suffering and duty to provide care.   M.C.L.A. § 750.49-70a;

140.   M.C.L.A. § 750.50  is the primary felony anti-animal cruelty provision

in  Michigan.    Amended  in  late  2008  (changing  the  words  "willfully"  and

"maliciously" to "knowingly"), this law clearly defines torturing an animal as a

general intent crime.  Under the statute, violation is an automatic felony punishable

by a prison term of up to four years for knowingly torturing, maiming, among other

acts, any animal "without just cause."  In addition, commission of a reckless act

knowing or having reason to know that the act will cause an animal to be tortured,

maimed or disfigured, among other acts, falls under the statute.

141.   A person is guilty of torturing animals if he (a) knowingly kills,

tortures, mutilates, maims or disfigures an animal; (b) commits a reckless act

knowing or having reason to know that the act will cause an animal to be killed,

tortured, mutilated, maimed, or disfigured; … M.C.L.A.  § 750.50b.

142.   As detailed in the above general allegations, Plaintiff objected to, reported, and complained about felonious and tortious conduct being perpetrated against dogs and Lincoln, in particular, by both Beaumont and K9ATF employees and agents.

143.   It is unlawful and in violation of the public policy of the State of Michigan for an employer to discharge or take other adverse action against an employee who reports and complains of unlawful acts being committed by the employer or its agents.

144.   Defendants violated the aforementioned public policy by the following acts:

   a.   Terminating/constructively discharging, or otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition or privilege of employment, because he objected to, reported, and complained about felonious and tortious conduct being perpetrated against dogs and Lincoln, in particular, by both Beaumont and K9ATF employees and agents;

   b.   Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because he objected to, reported, and complained about felonious and tortious conduct being

perpetrated against dogs and Lincoln, in particular, by both Beaumont and K9ATF employees and agents; and

c. Segregating, classifying or otherwise discriminating against Plaintiff with respect to a term, condition or privilege of employment, because he objected to, reported, and complained about felonious and tortious conduct being perpetrated against dogs and Lincoln, in particular, by both Beaumont and K9ATF employees and agents.

145. As a direct and proximate result of Beaumont's violation of Michigan's public policy, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

146. As a further direct and proximate result of Beaumont's violation of Michigan's public policy, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work and will so suffer in the future; he has been required to employ the services of attorneys to bring this lawsuit and will suffer additional damages in the future.

## COUNT IX
## INVASION OF PRIVACY –
## DISCLOSURE OF PRIVATE MEDICAL INFORMATION
## (AS TO GUERBER)

147. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

148. At an August 16, 2022 meeting, with Guerber, Mack and Wilkes berated and harassment Plaintiff for over two (2) hours, telling him he was not a good K9 handler, and that he was being removed from the K9 program because, per Guerber, "we feel you cannot do the job because you have anxiety."

149. Plaintiff had never provided K9ATF, Mack or Wilkes or anyone else at K9ATF any information about his private health issues.

150. The information about Plaintiff's medical conditions were private to him and of no concern to others.

151. The information Guerber disclosed to K9ATF, Mack and Wilkes was embarrassing to Plaintiff and caused him to suffer humiliation and embarrassment.

152. The information Guerber disclosed to K9ATF, Mack and Wilkes resulted, in part, in their decision to revoke Plaintiff's K9 handler certification and terminate his opportunities to work as a K9 handler.

153. As a direct and proximate result of Guerber's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe

benefits and has suffered mental anguish, physical and emotional distress, and humiliation and embarrassment.

## COUNT X
## CIVIL CONSPIRACY IN VIOLATION OF STATE LAW
## (AS TO DEFENDANTS TUCKER, GUERBER, MACK AND WILKES)

154.   Plaintiff realleges and hereby incorporates by reference the allegations contained in all previous paragraphs.

155.   As detailed in the above allegations, Tucker, Guerber, Mack and Wilkes illegally, maliciously, and wrongfully conspired with one another with the intent to and for illegal purposes of, including but not limited to, revoking Plaintiff's K9 handler certification and terminating him from his employment as a K9 handler.

156.   As a result of the conspiracy and Defendants' illegal, wrongful, or tortious acts, Plaintiff sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, and humiliation and embarrassment.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AS TO ALL DEFENDANTS)

157.  Plaintiff incorporates by reference herein the foregoing paragraphs  and allegations.

158.  Defendants' conduct was extreme, outrageous, and of such character as not to be tolerated by a civilized society.

159.  Defendants' conduct resulted in severe and serious emotional distress.

160.  As a direct and proximate result of Defendants' unlawful actions against Plaintiff, Plaintiff has suffered depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

161.  As a direct and proximate cause of Defendants' unlawful actions against Plaintiff, Plaintiff has been placed in financial distress and has suffered a loss of earnings, benefits, and retirement pay, as well as a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future.

**WHEREFORE**, Plaintiff prays that this Honorable Court grant the following remedies:

A.  Declare that the aforementioned practices and actions of Defendants constitute unlawful employment practices in violation of The Americans With Disabilities Act, as amended. 42 USC §§12111, et seq., the Family Medical Leave Act, 29 USC §2601, et seq.., the Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq., the Persons With Disabilities Civil Rights Act, MCL 37.1201 et seq., the Worker's Disability Compensation Act of 1969, MCL §418.101, et seq,, and Michigan common law

B.    Award Plaintiff all lost wages and the value of fringe benefits, past

and future, to which he is entitled;

C.    Award Plaintiff compensatory damages;

D.    Award Plaintiff punitive damages;

E.    Award Plaintiff exemplary damages;

F.    Award Plaintiff liquidated damages;

G.    Award Plaintiff reasonable attorney's fees, costs, and interest; and

H.    Award Plaintiff such other relief as this Court deems just and proper.

s/Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorney for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI 48098
Tel: (248) 763-6943
Fax (248) 689-3268
terigorman@aol.com

Charlotte Croson (P56589)
Croson, Taub & Michaels PLLC
Attorneys for Plaintiff
455 East Eisenhower Parkway
Suite 75
Ann Arbor, MI 48108
Tel: (734) 519-0973
Fax: (734) 519-0876
ccroson@ctmlawyers.com

## **JURY DEMAND**

Plaintiff demands a jury trial.

s/Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorney for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI 48098
Tel: (248) 763-6943
Fax (248) 689-3268
terigorman@aol.com