UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYLER MAUL,

    Plaintiff,

v.

BEAUMONT HOSPITAL – DEARBORN,
a Michigan corporation, K-9 ACADEMY
TRAINING FACILITY, LLC,
a Michigan Limited Liability Company,
JOSEPH TUCKER, an individual,
WHITNEY GUERBER, an individual,
DANIEL MACK, an individual, and
MARK WILKES, an individual,

    Defendants.

Case No, 23-CV-11139

Hon. Mark A. Goldsmith

Magistrate Judge Anthony P. Patti

---

## **RULE 26(f) JOINT DISCOVERY PLAN**

In accordance with Federal Rule of Civil Procedure 26(f)(3) and the Court's request to submit a Joint Discovery Plan, Plaintiff and Defendants, by their attorneys, submit the following proposed discovery plan.

On September 13, 2023, the parties conferred and discussed the following issues identified under Rule 26(f) of the Federal Rules of Civil Procedure and in the Court's September 6, 2023 Order. A brief summary follows:

1

1. **A brief summary of the case**.

(a) Plaintiff:

Plaintiff is a Caucasian 30 year old man with legally recognized disabilities; i.e., General Anxiety Disorder and Panic Disorder, of which Defendants had notice.

In 2015, Plaintiff graduated from Ferris State University with a degree in criminal justice. In 2018, Plaintiff commenced employment as a security officer at Beaumont Hospital – Taylor. In July 2021, Plaintiff responded to a posted opening and was hired for a security position at Beaumont-Dearborn ("Beaumont"). In November 2021, Plaintiff responded to a posted opening and was transferred to a canine ("K-9") officer position at Beaumont. In late November or early December 2021, Plaintiff and Beaumont entered into a contract via a signed job description wherein the parties committed to a three (3) year term.

In early December 2021, Plaintiff drove to Wapakoneta, Ohio to adopt Lincoln, a one year old German Shepherd, who had been born on November 13, 2020 in the Czech Republic and transported to the United States early in 2021. Lincoln lived with and was cared for by Plaintiff from December 2021 to September 2022 when Beaumont unlawfully removed him from Plaintiff's custody.

On December 13, 2021, Plaintiff and Lincoln began a three-month training at Defendant K-9 Academy Training Facility LLC. ("K-9ATF). The first month of training was full time at K9ATF's Taylor, Michigan facility. The second and

third month of training consisted of two days (Monday and Tuesday) training at K9ATF's Taylor, Michigan facility and three days (Wednesday, Thursday and Friday) working at Beaumont.

K9ATF trainers with whom Plaintiff and Lincoln trained included, in particular, Defendants Mack and Wilkes. As a "K9 handler" at Beaumont, Plaintiff reported to Defendants Tucker, Guerber and Lt. DeShaun White ("Lt. White"). Tucker, Lt. White, and their supervisor, Morris Cotton, are African American. Plaintiff had an unblemished record at both K9ATF and Beaumont as a K9 handler and obtained his certification in March 2022.

In or around July 2022, K9ATF trainer Mack became increasingly cruel and abusive with Lincoln in the use of a shock collar. K9ATF's trainer Mack subjected Lincoln to unlawful continuous shocks as a form of punishment rather than training. Lincoln suffered injuries due to Mack's unlawful, cruel, and abusive treatment, including, but not limited to, experiencing breathing difficulties and becoming progressively afraid of people. Plaintiff adamantly insisted that Mack stop unlawfully abusing Lincoln but Mack refused to cease and desist.

In July and August 2022, Plaintiff complained to Beaumont through Defendants Tucker and Guerber about the unlawful, cruel and abusive treatment to which Lincoln was being subjected by Mack. Tucker told Plaintiff that Beaumont

would "handle it" but did not take any action. Mack's unlawful, cruel, and abusive treatment of Lincoln continued unabated.

On August 16, 2022, Plaintiff was pulled into a meeting at the K9ATF training facility with Defendants Guerber, Mack, and Wilkes. At the August 16, 2022 meeting, Guerber, Mack, and Wilkes berated and harassed Plaintiff for over two (2) hours, telling him he was not a good K9 handler, and that he was being removed from the K9 program because, per Guerber, "we feel you cannot do the job because you have anxiety." Plaintiff and Lincoln left the training facility and went home. Plaintiff had never provided Defendants Mack or Wilkes or anyone else at K9ATF any information about his private health issues.

The next day, on August 17, 2022, Plaintiff complained again to Tucker about the unlawful abuse to which Lincoln was being subjected and the treatment to which he had been subjected the day before at the meeting with Guerber, Mack, and Wilkes. Tucker again told Plaintiff he would "handle it." Tucker then told Plaintiff that he did not want Lincoln in the hospital and to place Lincoln in Beaumont's K-9 car with the windows rolled down on this hot summer day. The car did not have the proper equipment for long-term confinement of Lincoln. Plaintiff pleaded with Tucker and provided various other ways to keep Lincoln safe and out of the hospital. Tucker denied Plaintiff's alternative options. Beaumont then assigned Plaintiff to a post inside Beaumont and directed him to not to leave his post for any reason unless he

4

was relieved. Relief was unavailable for long periods of time as Lincoln was confined to the hot car.

Tucker's treatment of Lincoln and Plaintiff caused Plaintiff to experience extreme illness due to his anxiety. Plaintiff called Beaumont's Lt. Deshaun White ("Lt. White") to request permission to go home due to his illness and anxiety, but Lt. White denied the request.

That afternoon, August 17, 2022, Plaintiff filed a complaint on Beaumont's "Trust Line" complaint system.

On August 19, 2022, Plaintiff spoke with family friend Patricia Odette who is the Mayor of the City of Woodhaven, Michigan, and explained that he had complained about the cruel and abusive treatment to which Lincoln had been treated both by K9ATF and Beaumont, the adverse health reaction Plaintiff had suffered, and the discriminatory and retaliatory treatment to which Plaintiff was now being subjected. Mayor Odette called both Beaumont and K9ATF on Plaintiff's behalf.

On August 20, 2022, Plaintiff called in sick, suffering from chest pain, and went to urgent care at Beaumont – Woodhaven where he was diagnosed with Covid. Beaumont placed Plaintiff on a Covid leave of absence for 10 days.

On August 22, 2022, while Plaintiff was on Covid leave of absence, Guerber called Plaintiff at home and verbally berated him again, stating "you don't call HR, mayors or the Trust Line without going through us first." Guerber further informed

5

Plaintiff that he was no longer allowed to go to the K9ATF training center because he had reported the cruel and abusive conduct of Mack and Wilkes to Beaumont Human Resources and to Security supervision.

On August 30, 2022, Plaintiff returned to work at Beaumont where he was threatened by Tucker, in the presence of Lt. White, that if he spoke with or complained to anyone else about the recent events, he would lose Lincoln as well as his job. That same day, August 30, 2022, Tucker directed Plaintiff to take Lincoln to Cahill Veterinary Hospital for a two-week in hospital evaluation. Plaintiff complied.

On September 2, 2022, Plaintiff suffered a massive anxiety attack at work due to the continuing harassment, discrimination, and retaliation to which he was being subjected. That same day, Plaintiff's personal care physician completed FMLA documentation to place Plaintiff on intermittent FMLA due to the at-work anxiety and panic attacks of August 17, 2022 and September 2, 2022. Plaintiff submitted the FMLA documents to Beaumont's Human Resources department.

From August 30, 2022 to September 7, 2022, Tucker and Lt. White continuously assured Plaintiff that Lincoln would return to him. On September 6, 2022, Tucker told Plaintiff to pick up Lincoln from the veterinary hospital the next day. Tucker opined that Lincoln was not doing well without Plaintiff and that Plaintiff was not doing well without Lincoln. The next day, September 7, 2022,

before Plaintiff could pick up Lincoln, Tucker informed Plaintiff that he could no longer keep Lincoln because he had applied for FMLA intermittent leave.

From September 7, 2022 through September 13, 2022, Plaintiff's requests for information about Lincoln's whereabouts and well-being were ignored and/or dismissed. Plaintiff and his mother both left messages for Human Resources but did not receive return calls. Plaintiff's anxiety and panic increased.

On September 13, 2022, Plaintiff was pulled into a meeting in Beaumont's Human Resources office with HR Representative Kelly Wormer, Tucker, Lt. White, and another security department supervisor, Keith McLean. At this meeting, Tucker and the others accused Plaintiff of "bizarre behavior", ordered Plaintiff to undergo a "fit for duty" examination or lose his job, and disarmed Plaintiff of his taser pending the "fit for duty" test. Multiple false accusations were made against Plaintiff by the Beaumont employees at this meeting.

On September 14, 2022, with his anxiety and panic disabilities exacerbated, Plaintiff sought treatment from his primary care physician. Plaintiff's primary care physician placed Plaintiff on a four (4) week medical leave. At the same time, Plaintiff's psychiatrist diagnosed Plaintiff with PTSD due to the treatment to which he had been subjected by Defendants. Plaintiff attempted to file a claim for worker's compensation benefits with Beaumont but Beaumont representatives refused to complete the requisite paperwork.

Subsequently, Defendants revoked Plaintiff's certification as a K-9 handler. The revocation resulted in an immediate pay cut and effectively extinguished Plaintiff's prospects of employment as a K-9 handler.

African American K-9 handlers have violated the rules and regulations governing K-9 handlers and have not received discipline nor had their certifications revoked or their contracts terminated. Beaumont, by and through its agents, representatives, and employees, treated Plaintiff differently from similarly situated African American employees in the terms and conditions of employment, based on unlawful consideration of race.

In early October 2022, Plaintiff's primary care physician extended Plaintiff's medical leave by an additional two (2) weeks.

Plaintiff's requests for the return of Lincoln to his care were denied.

On October 24, 2022, Plaintiff was constructively discharged.

On April 17, 2023, the Equal Employment Opportunity Commission issued a right-to-sue letter to Plaintiff. This litigation was filed within ninety (90) days of Plaintiff's receipt of his right-to-sue letter.

(b)     Defendants Beaumont Hospital-Dearborn, Tucker and Guerber:

Defendant Beaumont Hospital-Dearborn ("Beaumont Hospital") is a non-profit corporation, now known as Corewell Health. Defendant Joe Tucker and Defendant Whitney Guerber are both employed by Beaumont Hospital. Tucker

serves as the Director of Security Operations and Guerber is a Manager of Security Operations.

In October 2018 Plaintiff was hired as a security officer and in November 2021 Plaintiff became a K9 Handler. Plaintiff was assigned to a K9 named Lincoln. Plaintiff has never owned Lincoln; Lincoln is owned by Beaumont Hospital. Concerned by Plaintiff's mistreatment of Lincoln, members of Beaumont Health and K9 ATF met with Plaintiff to discuss Plaintiff's inability to correctly and humanely control Lincoln. In September 2022, Plaintiff applied for and was granted FMLA. On October 24, 2022, Plaintiff resigned. Defendants Beaumont Hospital, Tucker, and Guerber deny that they discriminated, harassed, or retaliated against Plaintiff for any reason. Defendants further deny the state law claims as untrue and meritless.

(c)     Defendants K-9 Academy Training Facility LLC, Mack and Wilkes:

The K-9 Academy Defendants deny mistreating Plaintiff or the dog, Lincoln. They further deny discriminating against Plaintiff in any way, that they knew of his alleged disability or that he ever requested accommodation.

2.     **<u>Subject matter jurisdiction</u>**.    Plaintiff contends that the Court has subject matter jurisdiction in accordance with 28 U.S.C § 1331 because this case presents federal questions under the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*. and the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* which also independently and directly provide for subject matter jurisdiction in

the federal courts. 42 U.S.C. § 12101, *et seq*. and 42 U.S.C. § 12117(a); 29 U.S.C. § 2617. Additionally, this case includes pendent state law claims under the Elliott-Larsen Civil Rights Act, MCL §37.2101 *et seq.*, Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq.,* the Worker's Disability Compensation Act of 1969, MCL §418.101, et seq., and Michigan common law over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. While Defendants admit that claims under the ADA and the FMLA arise under federal statues and are thus within the Court's original jurisdiction under 28 U.S.C. §1331, and that as plead, the other claims fall within the Court's supplemental jurisdiction under 28 U.S.C. §1367(a), Defendants deny that Plaintiff has valid claims.

3. **Relationship to other cases**. None.

4. **Necessity of amendments to pleadings**. The parties expect to file all motions to join parties or to amend the pleadings by November 1, 2023.

5. **Anticipated discovery disputes**. The Parties will exchange written discovery and schedule deposition dates. There are no anticipated discovery disputes at this time.

6. **Settlement, including alternative dispute resolution**. The Parties are open to alternative dispute resolution (settlement conference with the Magistrate Judge) following the completion of appropriate discovery.

7. **Anticipated Motion Practice.** Defendants anticipate that they will file a Summary Judgment Motion on all of Plaintiff's claims.

8. **Estimated length of trial**. 5 days.

9. **Proposed Scheduling Order**. The parties propose the following schedule regarding the disclosures required under Fed. R. Civ. P. 26:

| EVENT | DEADLINE |
|---|---|
| Rule 26(a)(1) Initial Disclosures | November 1, 2023 |
| Lay Witness List | February 15, 2024 |
| Exhibit List | February 15, 2024 |
| Expert Witness List and Rule 26(a)(2) Disclosures – Plaintiff-Liability Experts | February 15, 2024 |
| Expert Witness List and Rule 26(a)(2) Disclosures – Defendant-Liability Experts | March 15, 2024 |
| Discovery Cut-Off (Fact) | April 1, 2024 |
| Early Settlement Conference | On or around April 7, 2024 |
| Dispositive Motion | April 30, 2024 |
| Rule 26(a)(2) Disclosures: (Plaintiff/Damages Experts) | Within 60 days of the Court's ruling on any motion for summary judgment. |
| Rule 26(a)(2) Disclosures: (Defendant/Damages Experts) | Within 90 days of the Court's ruling on any motion for summary judgment. |
| All Other Motions, Including Motions to Limit/Exclude Expert Testimony and Motions *in Limine* | To be set by the Court six weeks before the Final Pre-Trial Conference |
| Final Settlement Conference | To be set by the Court |

| Joint Final Pre-Trial Order | To be set by the Court two weeks before the Final Pre-Trial Conference |
|---|---|
| Final Pretrial Conference | To be set by the Court two weeks before Trial |
| Trial | To be set by the Court |

10. **Issues concerning ESI**. The parties agree that electronic information shall be produced in a format that is compatible with common software such as Microsoft Word, Excel, and Adobe. Alternatively, electronic data may be produced in a hard copy format such that the paper copy does not result in loss of data. If discovery of ESI becomes more complex than currently anticipated, the parties shall craft a method for obtaining ESI in a manner that promotes transparency and efficiency while reducing the expense for any party. The parties also reserve the right to request production of ESI in its original or native format rather than, or in addition to, paper copies, subject to the parties' rights and obligations under the Federal Rules of Civil Procedure.

The Parties may request the return of all previously furnished documents or ESI that has been designated Confidential, including any copies thereof, and each person or party to whom such Confidential information has been furnished or produced shall be obligated to return it within thirty (30) days of said request. Provided however, counsel for the parties may retain their complete file, including

12

any Confidential information, pleadings, motion papers, deposition transcripts in a secure location.

12. **<u>Assertion of claims of privilege or work-product immunity after production</u>**. The Parties anticipate submitting a Proposed Stipulated Protective Order regarding the discovery of confidential information for the Court's approval and will abide by the Court's requirements concerning protective orders. Moreover, the parties agree that the Court should enter an order under Federal Rule of Evidence 502(d) regarding privileged material, and will include such language in the proposed protective order.

RESPECTFULLY SUBMITTED:

*s/*Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Ste. 200
Troy, MI 48098
Tel: (248) 763-6943
Fax: (248) 689-3268
terigorman@aol.com

/s/Charlotte Croson
Charlotte Croson (P56589)
Croson, Taub & Michaels PLLC
Attorneys for Plaintiff
455 East Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
Tel: (734) 519-0973
Fax: (734) 519-0876
ccroson@ctmlawyers.com

/s/Michelle C. Ruggirello
Thomas J. Davis (P78626)
Michelle R. Ruggirello (P75202)
Kienbaum Hardy Viviano
    Pelton & Forrest, P.L.C.
Attorneys for Defendants Beaumont,
    Tucker, and Guerber
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
tdavis@khvpf.com
mruggirello@khvpf.com

/s/ James K. Fett
James K. Fett (P39461
Fett & Fields, PC
407 North Main Street, 2nd Floor
Ann Arbor, MI 48104
734-954-0100
734-954-0762 (fax)
jim@fettlaw.com

14