## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TYLER MAUL,

     Plaintiff,                   Case No.: 2:23-cv-11139-MAG-APP

-v-                                  HON. MARK A. GOLDSMITH

BEAUMONT HOSPITAL – DEARBORN,
a Michigan corporation, K-9 ACADEMY
TRAINING FACILITY, LLC,
a Michigan Limited Liability Company,
JOSEPH TUCKER, an individual,
WHITNEY GUERBER, an individual,
DANIEL MACK, an individual, and
MARK WILKES, an individual,

     Defendants.

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS RULE 11(c) MOTION

Plaintiff, Tyler Maul, by and through his attorneys, Teresa J. Gorman PLLC and Croson, Taub & Michaels, P.L.C., for his Response in Opposition to Defendants' K-9 Academy Training Facility, LLC, Mark Wilkes's, and Daniel Mack's Rule 11(c) Motion, states as follows:

1.     Plaintiff's counsel admits that defense counsel communicated in writing with them prior to filling his original motion. Plaintiff's counsel responded by filing a stipulated order dismissing three counts of his Complaint. [ECF No. 29, PageID.260] Prior to the filing of Defendants' amended motion, Plaintiff's counsel requested in writing that defense counsel contact them prior to such filing to discuss

resolving the matter. Defense counsel declined to talk with Plaintiff's counsel before filing this amended motion. (Exhibit 1-3/15/24 email exchange) The parties did agree to adjourn the depositions of Defendants Mack and Wilkes while engaging in settlement discussions. Plaintiff has filed a motion to extend discovery for a brief period to allow for the taking of additional witness depositions. [ECF No. 33, PageID.314]

     2.     Admitted.

     3.     Admitted.

     4.     Admitted.

     5.     Admitted.

     6.     Admitted.

     7.     Admitted.

     8.     Plaintiff admits that Beaumont-Dearborn required Plaintiff and canine "Lincoln" to attend Defendant K-9 for training and that Plaintiff was a Beaumont employee. Plaintiff denies that Beaumont decided to terminate Plaintiff's employment, based in part on his failings as a K-9 handler as determined by these Defendants. Plaintiff denies he had such failings. Plaintiff resigned from his employment once Defendants advised Beaumont that Plaintiff could no longer attend training classes at their facility which resulted in Beaumont removing Lincoln from Plaintiff's care and demoting Plaintiff from his canine handler position.

Beaumont admitted in its Answer to Plaintiff's Complaint [ECF No. 17, PageID.108] that Defendants informed Beaumont that Plaintiff was banned from the K-9 Academy premises. (Exhibit 2 - Response to ¶ 57)

9.    Admitted.

10.    Admitted.

11.    Admitted.

12.    Denied as untrue. Defendants were aware of Plaintiff's disabilities and his history of disabilities, and they regarded Plaintiff as disabled. Plaintiff admits that he did not personally advise Defendants of his disabilities. In addition to other means, Defendants learned of Plaintiff's disabilities from Plaintiff's supervisor, Whitney Guerber.

13.    Denied as untrue for the reasons articulated in paragraph 12 above,

14.    Plaintiff denies that the evidence supporting his civil conspiracy claim is limited to his deposition testimony.

15.    Plaintiff denies that the evidence supporting his intentional infliction of emotional distress claim is limited to his deposition testimony.

For the reasons discussed more fully in the accompanying Brief in Support of this Response, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion in its entirety and award Plaintiff his costs and attorney fees incurred in having to respond to this motion.

*/s/Teresa J. Gorman*
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Ste. 200
Troy, MI 48098
Tel: (248) 763-6943
Fax: (248) 689-3268
terigorman@aol.com

*/s/Charlotte Croson*
Charlotte Croson (P56589)
Croson, Taub & Michaels PLLC
Attorneys for Plaintiff
455 East Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
Tel: (734) 519-0973
Fax: (734) 519-0876
ccroson@ctmlawyers.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TYLER MAUL,

     Plaintiff,                           Case No.: 2:23-cv-11139-MAG-APP

-v-                                    HON. MARK A. GOLDSMITH

BEAUMONT HOSPITAL – DEARBORN,
a Michigan corporation, K-9 ACADEMY
TRAINING FACILITY, LLC,
a Michigan Limited Liability Company,
JOSEPH TUCKER, an individual,
WHITNEY GUERBER, an individual,
DANIEL MACK, an individual, and
MARK WILKES, an individual,

     Defendants.

---

## PLAINTIFF'S BRIEF IN SUPPORT OF
## RESPONSE IN OPPOSITION TO
## <u>DEFENDANTS RULE 11(c) MOTION</u>

## LOCAL RULE CERTIFICATE OF COMPLIANCE

I, Teresa J. Gorman, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all texts and footnotes no smaller that 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certified that it is appropriate in length. Local Rule 7.1(d)(3).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

ISSUE RESTATED ................................................................................... iv

INDEX OF EXHIBITS .............................................................................. v

I.    PROCEDURAL / FACTUAL BACKGROUND ................................. 1

    Procedural Background ...................................................................... 1

    Factual Background ........................................................................... 2

II.   STANDARD OF REVIEW ............................................................... 7

III.  ARGUMENT ................................................................................... 8

    A.  Defendants' Motion Should Be Denied As An Improper Mechanism To Achieve Resolution On The Merits And As Premature ................................. 8

    B.  Plaintiff's Claims Have Evidentiary Support, Are Warranted By Existing Law, And Are Not Brought For An Improper Purpose ................................. 10

    C.  Plaintiff Presents A Prima Facie Case Of Disability Discrimination In Violation Of The Americans With Disabilities Act, As Amended ............... 13

    D.  Plaintiff Presents A Prima Facie Case Of Disability Discrimination In Violation Of The Persons With Disabilities Civil Rights Act ..................... 16

    E.  Plaintiff Presents A Prima Facie Case of Civil Conspiracy ......................... 20

    F.  Plaintiff Presents A Prima Facie Case of Intentional Infliction of Emotional Distress ........................................................................... 22

IV.   CONCLUSION ............................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999)..................................15

*Cebreco v. Music Hall Ctr for the Performing Arts, Inc*, 219 Mich. App. 353, 555 N.W.2d 862 (1996) .................................................................................. 17, 18, 19

*Cooter v. Gell v. Hartmax Corp.*, 496 U.S. 384 (1990)......................................8, 11

*E.E.O.C. v. Pines of Clarkston, Inc.*, 2014 WL 6612375 (E.D. Mich. 11/20/14) ...12

*El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 934 N.W.2d 665 (2019) .18

*Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 686 NW2d 273 (2004)..............22

*Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985) ........................................................20

*Ledsinger v. Burmeister*, 114 Mich. App. 12, 318 N.W.2d 558 (1982).................23

*Lewis v. LeGrow*, 258 Mich. App. 175, 670 N.W. 675 (2003) ..............................22

*Libertarian Party of Ohio, et al. v. Husted*, 188 F.Supp.3d 665 (E.D. Oh, 2016) ..19

*Mann v. G & G Mfg., Inc*., 900 F.2d 953 (6th Cir.), *cert. denied*, 498 U.S. 959 (1990)......................................................................................................................8

*Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609 (6th Cir. 2010) ....................................................................................................................10

*People v. Henderson*, 282 Mich. App. 307, 765 N.W.2d 619 (2009) .....................21

*Ridder v. City of Springfield,* 109 F.3d 288 (6th Cir. 1997) ......................................8

*Thafs v. Protor*, 316 F.3d 584 (6th Cir. 2003) ........................................................11

*Tropf v. Fidelity Nat'l Title Ins. Co*., 289 F.3d 929 (6th Cir. 2002) ........................11

*Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796 (5th Cir. 2003) ............10

**Statutes**

42 U.S.C. § 12182(a) ...............................................................................................15

MCL 37.1102 .............................................................................................................16

MCL 37.1103 .............................................................................................................17

MCL 37.1302(a)........................................................................................16

MCL 750.50(f) .........................................................................................21

**Rules**

Fed R. Civ. P. 11 ......................................................................................8

**Treatises**

Fed.R.Civ.P 11 Advisory Committee Notes (1993 Amendments)............................8

## ISSUE RESTATED

Defendants have not met the high bar of Rule 11 and shown that Plaintiff's counsel is motivated by an improper purpose in this litigation or that Plaintiff or his counsel's conduct was not reasonable under the circumstances of this case. As set forth herein, Plaintiff has shown that there is factual support for his claims and that further discovery will lead to further admissible evidence supporting his claims.

Rather, Plaintiff respectfully submits that Defendants' motion is an improper attempt to convert a dispute over the factual allegations and legal arguments into a sanctions battle. Plaintiff requests that Defendants' motion be denied because (1) it improperly seeks disposition on the merits through a Rule 11 motion, (2) it is brought prematurely before discovery has been completed, and (3) Plaintiff's claims have evidentiary support, are warranted by existing law, and are not brought for an improper purpose.

## INDEX OF EXHIBITS

Exhibit 1     3/15/24 email exchange

Exhibit 2     Answer to Complaint – excerpt

Exhibit 3     2021 Year-End Performance Development Discussion

Exhibit 4     Deposition of Tyler Maul

Exhibit 5     Deposition of Terry Foley

Exhibit 6     Declaration of Tyler Maul

Exhibit 7     Transcript of 8/16/22\

Exhibit 8     *E.E.O.C. v Pines of Clarkston, Inc.,* 2014 WL 6612375 (E.D. Mich. 11/20/14)

Exhibit 9     Wilkes text message

Exhibit 10    Defendants' Expert Witness List

## I.  PROCEDURAL / FACTUAL BACKGROUND

### Procedural Background

On February 15, 2024, approximately one and a half months prior to the close of discovery, Defendants provided Plaintiff with a "safe harbor" letter and copy of their anticipated "Defendants Rule 11(c) Motion." On March 5, 2024, Plaintiff voluntarily dismissed Counts II and IV against these Defendants and Counts I against the individual Defendants. [ECF No. 29, PageID.260] Defendants have now filed their amended motion as to the remaining claims asserted against them in Plaintiff's complaint.

The motion filed by Defendants K-9 Academy Training Facility, LLC, Mark Wilkes, and Daniel Mack ("Defendants") asserts that Plaintiff's Complaint [ECF No. 1, PageID.1] was filed in violation of Rule 11 because Plaintiff allegedly has no evidence to support his claims against Defendants.

Respectfully, this motion is an improper attempt to convert a dispute over the factual allegations and legal arguments into a sanctions battle. As explained below, Plaintiff requests that Defendants' motion be denied because (1) it improperly seeks disposition on the merits through a Rule 11 motion, (2) it is brought prematurely before discovery has been completed, and (3) Plaintiff's claims have evidentiary support, are warranted by existing law, and are not brought for an improper purpose.

1

Plaintiff is a Caucasian 31-year-old man with legally recognized disabilities; i.e., General Anxiety Disorder and Panic Disorder, of which Defendants had notice.

## Factual Background

In 2015, Plaintiff graduated from Ferris State University with a degree in criminal justice. In 2018, Plaintiff commenced employment as a security officer at Beaumont Hospital – Taylor. In July 2021, Plaintiff responded to a posted opening and was hired for a security position at Beaumont-Dearborn ("Beaumont"). In November 2021, Plaintiff responded to a posted opening and was transferred to a canine ("K-9") officer position at Beaumont. In late November or early December 2021, Plaintiff and Beaumont entered into a contract via a signed job description wherein the parties committed to a three (3) year term.

In early December 2021, Plaintiff drove to Wapakoneta, Ohio to pick up Lincoln, a one-year-old German Shepherd, who had been born on November 13, 2020 in the Czech Republic and transported to the United States early in 2021. Lincoln was owned by Beaumont but lived with and was cared for by Plaintiff from December 2021 to September 2022.

On December 13, 2021, Plaintiff and Lincoln began a three-month training at Defendant K-9 Academy Training Facility LLC. ("K9ATF") The first month of training was full time at K9ATF's Taylor, Michigan facility. The second and third month of training consisted of two days (Monday and Tuesday) training at K9ATF's

Taylor, Michigan facility and three days (Wednesday, Thursday, and Friday) working at Beaumont.

K9ATF trainers with whom Plaintiff and Lincoln trained included, in particular, Defendants Mack and Wilkes. As a "K9 handler" at Beaumont, Plaintiff reported to former defendants Whitney Guerber and Joseph Tucker.

Plaintiff had an unblemished record at both K9ATF and Beaumont as a K9 handler and obtained his K9 handler certification in March 2022. There was and is no written criticism of Plaintiff's performance as a K9 handler from any of the Defendants. On May 18, 2022, Plaintiff received positive commentary from his immediate supervisor at Beaumont on his yearly evaluation. (Exhibit 3 – 2021 Year-End Performance Development Discussion)

In or around July 2022, K9ATF Defendant Mack became increasingly cruel and abusive with Lincoln in the use of a shock collar, subjecting Lincoln to unlawful continuous shocks as a form of punishment rather than training. Lincoln suffered injuries due to Mack's unlawful, cruel, and abusive treatment, including, but not limited to, bloodshot eyes, red ears, bleeding, and breathing difficulties. Plaintiff adamantly insisted that Mack stop unlawfully abusing Lincoln, but Mack refused to cease and desist. (Exhibit 4 – Deposition of Tyler Maul at 125-126, 134)

In July and August 2022, Plaintiff complained to Beaumont through Tucker and Guerber about the unlawful, cruel, and abusive treatment to which Lincoln was

being subjected by Mack. Tucker told Plaintiff that Beaumont would "handle it" but did not take any action. Mack's unlawful, cruel, and abusive treatment of Lincoln continued unabated. (Ex. 4 at 126) Plaintiff then reported the treatment to Woodhaven Veterinarian Clinic and also spoke with family friend Patricia Odette who is the Mayor of the City of Woodhaven, Michigan. Woodhaven Veterinarian Clinic called K9ATF owner, Terry Foley. Mayor Odette reported the matter to the Woodhaven Police Department who also called Terry Foley. (Exhibit 5 – Deposition of Terry Foley at 65-67)

Shortly thereafter, on August 16, 2022, Plaintiff was pulled into a meeting at the K9ATF training facility with Guerber and Defendants Mack, and Wilkes. At the August 16, 2022 meeting, which Plaintiff described as an "ambush" (Ex. at 71, 149), Guerber, Mack, and Wilkes berated and harassed Plaintiff for over two (2) hours, telling him he was not a good K9 handler, and that he was being removed from the K9 program because, per Guerber, "we feel you cannot do the job because you have anxiety." Guerber made her comments about Plaintiff's anxiety disorder in the presence of Defendants Mack and Wilkes. Both Mack and Wilkes had made prior comments about Plaintiff's anxiety disorder and Mack again referenced it during the meeting (Exhibit 6– Declaration of Tyler Maul; Exhibit 7 – Transcript of 8/16/22 meeting at 5; Ex. 4 at 75-77. 102-104, 108; motion to allow submission of the recording as an exhibit currently pending with the Court [ECF No. 32, PageID.309]).

4

Mack and Wilkes harangued Plaintiff about his "stress" over and over again during the meeting (Ex. 7 at Word Index at 18)

The next day, on August 17, 2022, Plaintiff complained again to Tucker about the unlawful abuse to which Lincoln was being subjected and the treatment to which he had been subjected the day before at the meeting with Guerber, Mack, and Wilkes. Tucker again told Plaintiff he would handle it. That afternoon, Plaintiff filed a complaint on Beaumont's "Trust Line" complaint system.

On August 20, 2022, Plaintiff called in sick, suffering from chest pain, and went to urgent care at Beaumont – Woodhaven where he was diagnosed with Covid. Beaumont placed Plaintiff on a Covid leave of absence for 10 days.

On August 22, 2022, while Plaintiff was on Covid leave of absence, Guerber called Plaintiff at home and verbally berated him again, stating that Plaintiff was no longer allowed to go to the K9ATF training center because he had reported the cruel and abusive conduct of Mack and Wilkes to Beaumont Human Resources and to Security supervision. Beaumont's Answer to Plaintiff's Complaint confirms that the decision to ban Plaintiff from K9ATF was made by Defendants and not Beaumont. (Ex. 2)

On August 30, 2022, Plaintiff returned to work at Beaumont where he was threatened by Tucker, in the presence of Lt. White, who told Plaintiff that Defendants had banned him from K9ATV. (Ex. 4 at 101,111) The decision by

K9ATV to ban Plaintiff from its premises and further training resulted in Plaintiff suffering an immediate pay cut and effectively extinguished Plaintiff's prospects of employment as a K-9 handler.

On September 2, 2022, Plaintiff suffered a massive anxiety attack at work due to the continuing harassment, discrimination, and retaliation to which he was being subjected. That same day, Plaintiff's personal care physician completed FMLA documentation to place Plaintiff on intermittent FMLA due to the at-work anxiety and panic attacks of August 17, 2022 and September 2, 2022. Plaintiff submitted the FMLA documents to Beaumont's Human Resources department.

From August 30, 2022 to September 7, 2022, Tucker and Lt. White continuously assured Plaintiff that Lincoln would return to him. On September 6, 2022, Tucker told Plaintiff to pick up Lincoln from the veterinary hospital the next day. Tucker opined that Lincoln was not doing well without Plaintiff and that Plaintiff was not doing well without Lincoln. The next day, September 7, 2022, before Plaintiff could pick up Lincoln, Tucker informed Plaintiff that he could no longer keep Lincoln because he had applied for FMLA intermittent leave.

From September 7, 2022 through September 13, 2022, Plaintiff's requests for information about Lincoln's whereabouts and well-being were ignored and/or dismissed. On September 14, 2022, with his anxiety and panic disabilities exacerbated, Plaintiff sought treatment from his primary care physician. Plaintiff's

primary care physician placed Plaintiff on a four (4) week medical leave. At the same time, Plaintiff's psychiatrist diagnosed Plaintiff with PTSD due to the treatment to which he had been subjected by Defendants.

In early October 2022, Plaintiff's primary care physician extended Plaintiff's medical leave by an additional two (2) weeks, Plaintiff's requests for the return of Lincoln to his care were denied, and on October 24, 2022, Plaintiff was constructively discharged.

This litigation followed. Prior to the commencement of discovery, Plaintiff and Beaumont settled the claims against Beaumont, Guerber and Tucker. [ECF No. 22, PageID.193] At the present time, Plaintiff and the remaining Defendants are still in the midst of discovery but paused the taking of depositions to engage in settlement discussions. Rather than negotiate a resolution, Defendants opted to file this motion instead.

## II.    <u>STANDARD OF REVIEW</u>

Defendants seek sanctions under Federal Rule of Civil Procedure 11. Rule 11(b) provides that sanctions may be available:

> (b)    By presenting to the court a pleadings, written motion, or other paper - whether by signing, filing, submitting, or later advocating, it - an attorney or unrepresented party certifies that to the best of the persons' knowledge, information, and belief, formed after an inquiry reasonable under the circumstances;

(1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Fed R. Civ. P. 11(b)(1-3). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1)

## III.  <u>ARGUMENT</u>

### A.  Defendants' Motion Should Be Denied As An Improper Mechanism To Achieve Resolution On The Merits And As Premature

A Rule 11 motion is not an avenue to seek judgment on the merits of an action; it is not a mechanism to resolve a lawsuit. Rather, a Rule 11 motion determines only a collateral issue – whether an attorney abused the judicial process. In this Court, the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances. *Ridder v. City of Springfield,* 109 F.3d 288, 292 (6th Cir. 1997) *citing Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir.), *cert. denied*, 498 U.S. 959 (1990); Fed.R.Civ.P 11 Advisory Committee Notes (1993 Amendments). A Court necessarily abuses its discretion if it bases its ruling on an

erroneous view of the law or a clearly erroneous view of the evidence. *Cooter v. Gell v. Hartmax Corp.*, 496 U.S. 384, 396 (1990).

Plaintiff's Complaint contained allegations against Beaumont Hospital – Dearborn and two of its employees as well as K-9 Academy Training Facility LLC and two of its employees. It contained information that was available to Plaintiff and his counsel at the time of filing and prior to any discovery having been completed. Prior to the commencement of discovery, Plaintiff and Defendants Beaumont-Dearborn and its two employees entered into a settlement agreement and the claims against those defendants were dismissed with prejudice. Thus, the only remaining Defendants in this matter are K-9 Academy Training Facility LLC and two of its employees.

On November 27, 2023, Plaintiff served Defendants with written discovery. The first responses arrived in February and have been trickling in since then. Most significantly, on the morning of Plaintiff's February 5, 2024 deposition and leaving no time to listen to it or have it transcribed, Defendants produced a recording of part of the meeting that had taken place on August 16, 2022.

The recording provided to Plaintiff on the day of his deposition has now been transcribed. (Ex. 7) Plaintiff deposed Terry Foley, the owner of Defendant K-9 Academy Training LLC, on March 7, 2024 and the depositions of Defendants Mark Wilkes and Daniel Mack were scheduled for March 14, 2024. These two depositions

were adjourned ostensibly so the parties could engage in settlement talks. The agreement to negotiate was merely a ruse on Defendants' part as they have made it clear that they have no interest in resolution and desire only to continue their punishment of the Plaintiff by running up fees and costs with the hope of a court order of reimbursement now or later.

The Defendants' depositions have been rescheduled for April 1, 2024. Defendants' Rule 11 motion is premature as discovery remains open and the parties continue to engage in discovery. There are more depositions to be taken. Defendants continue to piecemeal supplement their discovery responses with emails and random documents attached without explanation. A reasonable inquiry standard of Rule 11 does not preclude a plaintiff from establishing the merits of its claim through discovery. A court may not grant a Rule 11 motion premised upon a lack of factual support for the complaint when the plaintiff has not been given opportunity to conduct discovery into all of the very facts alleged in it. Plaintiff's motion to extend discovery by 30 days is pending before the Court. [ECF No. 33, Page ID.314]

**B.    Plaintiff's Claims Have Evidentiary Support, Are Warranted By Existing Law, And Are Not Brought For An Improper Purpose.**

Rule 11 is reserved for the rare circumstances in which the Court feels that counsel is motivated by an 'improper purpose.'" *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 805 (5th Cir. 2003). The rule imposes a "continual obligation" on attorneys to "refrain from pursuing meritless or frivolous claims at

any stage of the proceedings." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 627 (6th Cir. 2010) (punctuation modified). The test for whether Rule 11 sanctions are appropriate is whether the individual's conduct for which sanctions are sought "was reasonable under the circumstances." *Tropf v. Fidelity Nat'l Title Ins. Co*., 289 F.3d 929, 939 (6th Cir. 2002) (punctuation modified). The purpose of the rule is to "deter baseless filings in district court." *Cooter*, 496 U.S. at 393 (1990).

The Sixth Circuit has held that, "[a]s a general proposition, a district court should be hesitant to determine that a party's complaint is in violation of Rule 11(b) when the suit is dismissed pursuant to Rule 12(b)(6)," at which point there is ordinarily little evidence before the court. *Thafs v. Protor*, 316 F.3d 584, 594-595 (6th Cir. 2003) (explaining that '[a] complaint does not merit sanctions under Rule 11 simply because it merits dismissal pursuant to Rule 12(b)(6).") It has also emphasized that courts should not equate claims "[un]warranted by existing law as the expression is used in Rule 11(b)(2)" to all claims that fail to satisfy Rule 12(b)(6) because "Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Id.* (punctuation modified). In *Tahfs*, the court, considering an award of monetary sanctions, found that even though the suit was dismissed for failure to state a claim, sanctions were not warranted because the "complaint was not completely unwarranted by existing law." *Id.* at 594.

11

Here, Defendants have not filed a motion to dismiss under Rule 12(b)(6) nor have they filed a Motion for Summary Judgment. The Court is being asked to decide the ultimate issue of the case not by dispositive motion, but in context of a Rule 11 motion for sanctions. This is not the appropriate use of a Rule 11 motion. Even if the Defendants could defeat each and every remaining count of Plaintiff's Complaint at trial or at summary judgment, such a holding would not entitle them to any Rule 11 sanctions unless it could be shown that Plaintiff brought and pursued claims which were wholly without any basis or were brought with improper purpose. Plaintiff proffers facts in support of his claims and meets the burden of showing that his claims were objectively reasonable to satisfy the requirements of Rule 11. The burden required to do so is not an onerous one. Plaintiff's Complaint was not "wholly lacking in arguable legal merit," and the allegations were not "completely unwarranted by the evidence." *E.E.O.C. v. Pines of Clarkston, Inc.*, 2014 WL 6612375 (E.D. Mich. 11/20/14) (examining motion for sanctions at the pleading state). (Exhibit 8 - *E.E.O.C. v Pines of Clarkston, Inc.*, 2014 WL 6612375 (E.D. Mich. 11/20/14). Further there is insufficient basis to find that Plaintiff filed and maintained the Complaint to harass Defendants and to cause it to needlessly incur costs.

**C.      Plaintiff Presents A Prima Facie Case Of Disability Discrimination In Violation Of The Americans With Disabilities Act, As Amended**

Defendants' entire defense to Plaintiff's claim of disability discrimination in violation of the Americans With Disabilities Act, As Amended, ("ADA") is that they did not know that Plaintiff was disabled and, as such, could not have discriminated against him due to his disabilities. This is untrue. Evidence shows that Defendants indeed knew that Plaintiff suffered from anxiety. Defendant Wilkes acknowledged it in a text message exchange with one of Plaintiff's co-workers. (Exhibit 9 – Wilkes text message) Defendant Mack referenced it during the August 16, 2022 meeting:

> DANIEL MACK: … The dog is under stress. You're under stress.

> WHITNEY GUERBER: We see it.

> DANIEL MACK: This, this should not be, you should be coming to training and not be under stress. Not going to start something and go, and you're dripping sweat and anxiety is filling your body because you're going about to go do something that's going to make you stressful. This should be fun. –

> TYLER MAUL: But that's what –

> DANIEL MACK: You can say it's fun, Tyler. I can read it all of your face.

> WHITNEY GUERBER: You look stressed.

> DANIEL MACK: Each time (inaudible) go get to do something, you are stressed. You're like man, you're a ball of stress.

(Exhibit 7 at 5-6) And Plaintiff testified and avers that Guerber, in the presence of Wilkes and Mack, flat out told Plaintiff that he was unqualified to continue as a K9 handler due to his anxiety. (Ex. 4 at 75-77; Ex. 5)

Further, Defendants regarded Plaintiff as disabled. Throughout the August 16, 2022 meeting, they repeatedly admonished Plaintiff for being too stressed and suffering from stress. (Ex. 7) Defendants' expert witness list, identifying Foley, Wilkes and Mack as "experts" states:

> The K-9 Defendants intend to use Terrence M. Foley and the individual defendants as expert witnesses on Plaintiff's inability to perform the duties of a security officer on account of his generalized anxiety and panic disorders for the reasons set forth in Mr. Foley's deposition and in the upcoming depositions of the individual defendants.

(Exhibit 10 – Defendants' Expert Witness List) None of these alleged expert witnesses has identified any expertise they hold in the areas of medicine or mental health.

Further, Mr. Foley testified that, in his opinion, Plaintiff is too disabled to perform the jobs of a security officer or a K9 handler. (Ex. 5 at 78-81) Mr. Foley's educational background consists of high school and graduation from a police academy and a fire academy. He is not a physician or a mental health treater. He has never reviewed Plaintiff's evaluations, never seen him perform his duties as a K9 handler, and never seen him perform his duties as a security officer. (Ex. 5 at 83)

Defendants have not had Plaintiff examined by a mental health treater or any physician. No expert testimony exists to disqualify Plaintiff from either profession. Plaintiff received positive performance evaluations at Beaumont where he was successfully employed as a security officer from 2018 to December 2021and a K9 handler from December 2021 until August 2022. The only negative evidence presented by Defendants as to Plaintiff's performance or skills is their own biased and discriminatory opinions.

Plaintiff also pleads a failure to accommodate and incorporates the argument presented in the following section relative to his claims of violations of Michigan's Persons with Disabilities Act.

Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation. 42 U.S.C. § 12182(a). Specifically, it states: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

"Generally, '[a] person alleging discrimination under Title III must show (1) that he is disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) that the

15

defendant took adverse action against the plaintiff that was based on the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation." *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999).

Plaintiff presents a prima facie case of disability discrimination in violation of the ADA. There is no evidence of prior performance issues or poor evaluations for Plaintiff. Defendants became aware of his disability, shortly thereafter, they denied him access to K9ATF training, made recommendations to his employer that he should not be a K9 officer, and harangued and harassed him in a meeting where they made repeated direct and oblique references to his disability.

### D.   Plaintiff Presents A Prima Facie Case Of Disability Discrimination In Violation Of The Persons With Disabilities Civil Rights Act

MCL 37.1102 sets forth the purpose underlying the enactment of Michigan's Persons With Disabilities Civil Rights Act and provides in relevant part as follows:

> (1) The opportunity to obtain ... full and equal utilization of public accommodations ... without discrimination because of a disability is guaranteed by this act and is a civil right.
>
> (2) Except as otherwise provided in article 2, a person shall accommodate a person with a disability for purposes of ... public accommodation ... unless the person demonstrates that the accommodation would impose an undue hardship. [MCL 37.1102.]

16

Additionally, MCL 37.1302(a) provides as follows:

> Except where permitted by law, a person shall not:
>
> (a)    Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids. [MCL 37.1302(a).]

Once a plaintiff has demonstrated that he is able to benefit from services provided by a place of public accommodation and that he is being denied an 'equal opportunity' to do so because of a 'physical or mental characteristic,' the facility has a duty to accommodate the person." *Cebreco v. Music Hall Ctr for the Performing Arts, Inc*, 219 Mich. App. 353, 359, 555 N.W.2d 862 (1996) (citations omitted). MCL 37.1103(l)(ii) indicates that "unrelated to the individual's ability" means that "with or without accommodation, an individual's disability does not prevent the individual from ... utilizing and benefiting from a place of public accommodation or public service."

In this case, plaintiff's alleged disability would not have prevented him from utilizing and benefiting from additional canine training. In the August 16, 2022 meeting, as he was being blindsided with discriminatory criticism, Plaintiff literally begged Defendants for additional K9 training or whatever assistance they could provide to assist him meet the previously unknown expectations:

17

TYLER MAUL: And if I have to put in more hours to get to that level then I will. (Ex. 7 at 3)

TYLER MAUL: Well then please help me so I can keep him … (Ex. 7 at 8)

TYLER MAUL: Then how do I, how do I get to this level that I need to get to in your guys' eyes? …

DANIEL MACK: I don't' think you have the ability to do that with a dog. (Ex. 7 at 12)

TYLER MAUL: That's why I'm asking for help in the first place. (Ex. 7 at 13)

TYLER MAUL: That's why I would, I'm asking for help. If it was this bad, why, you know, like, like …. (Ex. 7 at 18)

TYLER MAUL: If there's, if there's extra time that I need to do here to do, to get up to that standard, that's fine. If there's, whatever I need to do, that's fine, but I cannot accept the results. (Ex. 7 at 24)

TYLER MAUL: What I am asking is, is that for help to improve … (Ex. 7 at 34)

TYLER MAUL: Then what do I need to do? Even if I need to come on my own free time, pay for extra courses, what I need to do … to hit the accepted standards here. (Ex. 7 at 31)

TYLER MAUL: What I am asking is, is for help to improve …(Ex. 7 at 34)

TYLER MAUL: I know when I need to ask for help. I asked for help, apparently it shot me in the foot …. (Ex. 7 at 41)

Because his allegations show an ability to benefit from Defendants' offered services and that he did not have an equal opportunity to do so because of his disability, the allegations also establish, for purposes of evaluating this motion for sanctions (and, more particularly, a motion under MCR 2.116(C)(8) where

18

plaintiff's allegations are accepted as true, *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 160, 934 N.W.2d 665 (2019), that Defendants had a duty to accommodate Plaintiff. *Cebreco*, 219 Mich. App. at 359, 555 N.W.2d 862. Thus, accepting all of Plaintiff's factual allegations as true, Plaintiff has alleged claims under the PWDCRA.

> As the Michigan Court of Appeals has previously explained,

> There is no question that the [PWDCRA] imposes a potentially heavy obligation upon places of public accommodation with respect to handicapped individuals. Something more than merely equal treatment is required in order to satisfy the "equal opportunity" obligation of the [PWDCRA]. Such an obligation, however, is expressly set forth in the language of the statute and must be given reasonable meaning by this Court. The Legislature is presumed to have intended the meaning it plainly expressed.

> The [PWDCRA] requires a plaintiff to make a prima facie showing that the defendant has failed to accommodate his handicap. Once such a showing has been made, the burden of proof shifts to the defendant to show that the accommodation required would impose an "undue hardship."

*Cebreco*, 219 Mich. App. at 360, 555 N.W.2d 862 (citations omitted).

The evidence shows that Defendants are of the unbending opinion that someone who suffers from an anxiety disorder is unqualified to perform the duties of a security officer or a K9 handler. Indeed, without any education or experience upon which to rely, they purport to be "experts" on the matter. Plaintiff submits that this constitutes direct evidence of their discriminatory animus.

19

### E.    Plaintiff Presents A Prima Facie Case of Civil Conspiracy

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. *Libertarian Party of Ohio, et al. v. Husted*, 188 F.Supp.3d 665, 671 (E.D. Oh, 2016) *quoting Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).

The facts set for the herein establish that Defendants were aware of Plaintiff's disability. That they acted on that awareness by requiring Plaintiff to attend a mandatory meeting with Defendants and Guerber. That, prior to this, there had been no documented concerns about Plaintiff's performance in K9ATF training. But, in this meeting, Defendants Mack and Wilkes and Guerber told Plaintiff that "[w]e feel you cannot do the K9 position because you have anxiety" and that "[i]t requires someone who doesn't have anxiety to run these dogs", (Ex. 6), that Maul's anxiety was apparent and precluded him from being a K-9 handler, and that Defendants make recommendations to Beaumont about Plaintiff's capacity to be a K-9 handler, and Beaumont makes a determination based on those recommendations. (Ex. 7 at 5,

37) Thereafter, Plaintiff was removed as a K-9 handler. This is sufficient to state a claim that Wilkes and Mack acted in concert to have Plaintiff removed as a K-9 handler, and deny him public accommodations, in violation of the ADA and PWDCRA.

Moreover, after Mr. Foley received the phone calls from the Woodhaven veterinarian and the Woodhaven Police Dept. advising him of Plaintiff's complaints about the mistreatment of the dog Lincoln, Mr. Foley informed Defendants Mack and Wilkes as well as Beaumont's Whitney Guerber. Guerber advised that she was already aware of Plaintiff's complaints. (Ex. 5 at 68) Mr. Foley also testified that at the time he received the calls, Plaintiff's relationship with K9ATF had not been severed and that these calls came prior to when Plaintiff stopped coming to K9ATF for training. (Ex. 5 at 67)

Shortly thereafter, Guerber, Mack and Wilkes ambushed Plaintiff with the August 16, 2022 meeting where they tag-teamed an attack on Plaintiff, his disabilities, and his skills as a K9 handler. It is clear from the recording/transcript that a retaliatory conspiracy was created to remove Plaintiff from the program, without warning and without an opportunity to correct whatever deficiencies there may have been. Plaintiff's reports of Defendants' abuse of Lincoln provide the motive: to allow Defendants' criminal abuse of animals to go unremediated and continue into the future. *See* MCL 750.50(f) (a "person having the charge or custody

of an animal shall not…[n]egligently allow any animal, including one who is aged, diseased, maimed, hopelessly sick, disabled, or nonambulatory to suffer unnecessary neglect, torture, or pain") and *People v. Henderson*, 282 Mich. App. 307, 324, 765 N.W.2d 619, 629 (2009) defining "torture" in the statute as "to include every act or omission that causes or permits an animal to suffer unjustifiable or unreasonable pain, suffering, or death"). There is sufficient evidence to state a claim that Wilkes and Mack engaged in a conspiracy to cover up and hide their present and future criminal acts of animal abuse by removing Plaintiff from his position as a K-9 handler and trainee at K9ATF.

### F. Plaintiff Presents A Prima Facie Case of Intentional Infliction of Emotional Distress

To establish a claim of intentional infliction of emotional distress, a plaintiff must show "extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577, 686 NW2d 273 (2004) (quotation marks and citations omitted). "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lewis v. LeGrow*, 258 Mich. App. 175, 196, 670 N.W. 675 (2003) (quotation marks and citations omitted). "The test to determine whether a person's conduct was extreme and outrageous is whether recitation of the facts to

an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Id.* (quotation marks and citations omitted). "A defendant is not liable for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (quotation marks and citations omitted) "It is for the trial court to initially determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit discovery." *Hayley*, 262 Mich App at 577, 686 NW2d 273. "But where reasonable individuals may differ, it is for the jury to determine if the conduct was so extreme and outrageous as to permit recovery." *Id.*

Here, we submit that the entirety of Defendants' complained of conduct was so extreme and outrageous so as to state a claim for intentional infliction of emotional distress. Plaintiff was required to attend K9ATF training by his employer- he was a captive patron of Defendants. *Ledsinger v. Burmeister*, 114 Mich. App. 12, 19, 318 N.W.2d 558, 562 (1982) ("the extreme and outrageous character of the conduct may arise from the position of the actor, his relation to the distressed party, or from his knowledge of peculiar susceptibilities of the distressed party"). He could not leave training without being removed from his position as a K9 handler at Beaumont. K9ATF, Mack, and Wilkes did not have an employment relationship with Plaintiff but nonetheless possessed a veto over Plaintiff's employment as a K9 handler. Defendants were obligated by law to provide Plaintiff access to K9ATF and

23

its services without discrimination and with necessary reasonable accommodations. They did not. Instead, Defendants used their position of power over Plaintiff to subject him to hours of haranguing and mental distress that specifically triggered his disability—of which they were aware. *Ledsinger*, *supra*. While this particular case lacks the slurs present in *Ledsinger*, like *Ledsinger* "[c]ritical to this case and to defendant's ability to inflict distress is the relation between the parties, that of a public merchant to his customer. Defendant's position permitted him to accept or reject Mr. Ledsinger's business. The inference to be drawn from plaintiffs' complaint is that defendant ultimately rejected that business based on racial considerations and thereby abused the position he stood in." *Id.* at 20-21. Here, Defendants abused their position, and their knowledge of Plaintiff's disability, to inflict great emotional distress upon Plaintiff because of their prejudice towards him as a disabled person and/or his reports of their criminal conduct.

It is worth emphasizing that there is not a single document that supports any allegation that Plaintiff was poor dog handler. Such an assessment could have been a reasonable and normal avenue for Defendants to accomplish their legitimate task as K9 trainers. Defendants did not choose this reasonable, normal, non-abusive path that would have been within their remit as trainers. Instead, they went far beyond the bounds of normal training assessments and interactions with a patron of their services. Plaintiff did not work for Defendants, but neither was he free to simply

walk away from their abuse without significant loss to himself. But Defendants did not treat Plaintiff as a patron of their services and establishment who had rights protected by law. They used their power over him to inflict distress for illegitimate and illegal purposes.

This is certainly sufficient to state a claim for intentional infliction of emotional distress. Beyond that, a jury could certainly look at these facts and declare it outrageous that a business and its agents would treat patrons in such a manner— particularly where they are aware of the patron's captive status and his particular susceptibilities and are doing so for their own illegitimate and prejudiced purposes.

## IV.   <u>CONCLUSION</u>

Based the above, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion in its entirety and award Plaintiff his costs and attorney fees incurred in having to respond to this motion.

Respectfully submitted,

*/s/Teresa J. Gorman*
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Ste. 200
Troy, MI 48098
Tel: (248) 763-6943
Fax: (248) 689-3268
terigorman@aol.com

/s/*Charlotte Croson*
Charlotte Croson (P56589)
Croson, Taub & Michaels PLLC
Attorneys for Plaintiff
455 East Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
Tel: (734) 519-0973
Fax: (734) 519-0876
ccroson@ctmlawyers.com

Dated: March 29, 2024

## **PROOF OF SERVICE**

I hereby certify that on March 29, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all of the attorneys of record.

/s/Teresa J. Gorman
Teresa J. Gorman (P61001)